21-1830-cv
Nitkewicz v. Lincoln Life & Annuity Co. of N.Y.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: June 6, 2022          Decided:  September 26, 2022)

Docket No. 21-1830-cv

_____

ANDREW NITKEWICZ, AS TRUSTEE OF THE JOAN C. LUPE FAMILY TRUST
 AND ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant*,

v.

LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK,

*Defendant-Appellee*.

_____

Before:

CALABRESI, LOHIER, and SULLIVAN, *Circuit Judges*.

The United States District Court for the Southern District Court (Cronan, J.) concluded that Lincoln Life & Annuity Company of New York was not obligated under New York Insurance Law Section 3203(a)(2) to refund a payment Joan C. Lupe had deposited into a policy account associated with her life insurance policy five months before she died.  Because no New York court has analyzed this provision of New York insurance law, and because insurance policy implicates significant New York State interests, we defer decision on this appeal in order to certify the following question to the New York Court of Appeals:  Whether a planned payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a "premium actually paid for

any period" under the refund provision of New York Insurance Law Section 3203(a)(2). QUESTION CERTIFIED.

SETH ARD (Alexander P. Frawley, *on the brief*), Susman Godfrey L.L.P., New York, NY, *for Plaintiff-Appellant* Andrew Nitkewicz, as Trustee of the Joan C. Lupe Family Trust and on behalf of himself and all others similarly situated.

JOHN F. LASALLE (Alan B. Vickery, *on the brief*), Boies Schiller Flexner LLP, New York, NY, *for Defendant-Appellee* Lincoln Life & Annuity Company of New York.

PER CURIAM:

New York Insurance Law Section 3203(a)(2) governs what an insurance company must refund when a policyholder dies. It provides that "if the death of the insured occurs during a period for which the premium has been paid, the insurer shall add to the policy proceeds a refund of any premium actually paid for any period beyond the end of the policy month in which such death occurred . . . ." N.Y. Ins. Law § 3203(a)(2). The question presented in this case is whether an annual payment that Joan C. Lupe, the insured, made into an interest-bearing account associated with her universal life insurance policy constitutes a "premium actually paid for any period" such that Lincoln Life & Annuity Company of New York ("Lincoln Life"), Lupe's insurance company,

2

was statutorily required to refund a portion of that payment to her estate after she died.

New York's state courts have not provided any guidance for us to answer whether Lupe's annual payment falls within the statute's scope. And both parties — Lincoln Life and the trustee of Lupe's estate, Andrew Nitkewicz — concede that no New York court has ever interpreted Section 3203(a)(2), let alone its two important phrases: "a premium actually paid" and "for any period." Because no New York court has analyzed this provision of New York insurance law, and because the statute implicates significant New York State interests in regulating the insurance industry, we reserve decision and certify the following question to the New York Court of Appeals:

> Whether a planned payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a "premium actually paid for any period" under the refund provision of New York Insurance Law Section 3203(a)(2).

**BACKGROUND**

In 2011 Lincoln Life issued a life insurance policy to the Joan C. Lupe Family Trust to insure the life of Joan C. Lupe for $1.5 million. Lupe elected to receive "Flexible Premium Adjustable Life Insurance," which is Lincoln Life's "generic name for universal life insurance." App'x 62, 100. Unlike term life

3

insurance, for which the policyholder simply pays a periodic premium that extends coverage for a specific amount of time, universal life insurance typically includes both regular insurance coverage and an interest-bearing account with cash value. See Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 342 (1999) (explaining that universal life insurance "combines 'pure' life insurance with an investment component that creates a potential accumulation of money in the policy").

The interest-bearing account that Lincoln Life provides to policyholders (the "Policy Account") is a centerpiece of its universal life insurance policy. See App'x 62. The policyholder pays premiums into that account, and Lincoln Life takes money from it to pay for insurance coverage and other expenses. The initial premium is due on the date the policy goes into effect, but the payment schedule is flexible thereafter. Premiums "may be paid at any time prior to the Insured's Attained Age 121 and in any amount," so long as the payments are sufficient to meet the monthly deductions, which keep the policy in force from month-to-month. App'x 75. The funds in the Policy Account, meanwhile, accumulate interest, may be withdrawn or partially withdrawn by the policyholder, and may serve as security for a loan. On a set date every month,

4

Lincoln Life deducts from the Policy Account the cost of insurance plus the cost of any riders or administrative charges. If on that date there are insufficient funds in the account to cover the monthly deduction, the policy enters a grace period of 61 days to allow the policyholder to deposit "the minimum amount needed to continue" coverage. App'x 76. If sufficient payment is not made, the policy terminates at the end of the grace period.

To ensure that the funds in their Policy Accounts never dip below the amount required to continue coverage, policyholders may commit to a payment schedule in advance through a feature known as the "Planned Premium." This feature is entirely optional and does not itself guarantee continued coverage. See App'x 75 ("Payment of the Planned Premium is Your option," and "Payment of a Planned Premium may not prevent this policy from terminating"). Policyholders who elect to pay a Planned Premium indicate how and when they intend to deposit money into their Policy Account, and Lincoln Life then sends them "payment reminder notices" at the appointed intervals. App'x 75. Consistent with that framework, Lupe chose to pay an annual Planned Premium of $53,878, for which she received billing reminders at her residence.

As noted, Lincoln Life deducts the cost of insurance from the Policy Account on a monthly basis.  The company calculates the cost of insurance as a function of "the net amount at risk for the month," where the net amount at risk is the death benefit for that month — that is, the amount payable on the death of the insured — minus the amount of money in the Policy Account.[1]  App'x 78.  Planned Premiums increase the amount of money in an insured's Policy Account and thus ultimately also lower the net amount at risk and therefore the cost of insurance.

Two additional aspects of Lincoln Life's insurance policy are relevant to this appeal.

First, as part of her policy, Lupe opted to execute a "Coverage Protection Guarantee Rider."  The rider is designed to prevent a policy from terminating when there is not enough money in the Policy Account to cover the monthly deduction.  Pursuant to the rider, Lincoln Life deducts from the Policy Account a "Coverage Protection Guarantee" monthly premium, which it deposits into accounts set aside for "Coverage Protection."  See App'x 62, 87, 328.  So long as the funds in the Coverage Protection accounts equal or exceed the value of any

---

[1] The policy agreement also refers to the amount of money in the Policy Account — that is, the value of the Policy Account — as the "Policy Value."  App'x 78.

debt, a policy will not enter the grace period even if there are not enough funds in the Policy Account. See App'x 87. As a result, policyholders can structure their Planned Premium payments so that they always have enough money in their Coverage Protection accounts to keep their policy in force.

Second, Lincoln Life offers policyholders the choice between two "death benefit options." App'x 77. Under "Option I," which Lupe chose, the death benefit is "the Specified Amount on the date of death," which in Lupe's case was $1.5 million. App'x 63, 77. Under "Option II," the death benefit is "the Specified Amount on the date of death plus the [value of the Policy Account] at the beginning of the policy month of death." App'x 77. These options offer the policyholder a tradeoff. Option I comes with a smaller death benefit, but a lower monthly cost of insurance (because Lincoln Life has less at risk since it will not need to pay out the full amount of the Policy Account). Option II, on the other hand, yields a larger death benefit, but a higher monthly cost of insurance (because Lincoln Life has more at risk since the money in the Policy Account ultimately belongs to the policyholder).

Lupe paid her last annual Planned Premium of $53,877.72 on May 7, 2018. Five months later, on October 6, 2018, she died. Upon her death, Lincoln Life

paid out the Specified Amount — $1.5 million — but declined to refund any portion of the Planned Premium that Lupe had paid earlier that year. Nitkewicz, as trustee, brought this suit against Lincoln Life for breach of contract, alleging that its refusal to refund a prorated portion of the Planned Premium that Lupe had paid violated New York Insurance Law Section 3203(a)(2). Lincoln Life moved to dismiss the complaint, arguing that Nitkewicz's "interpretation of the statute [was] unprecedented," was "inconsistent with the New York insurance regulator's published guidance," "disregard[ed] how universal life insurance works[,] and would undermine the Policy's provisions and structure." App'x 32.

The District Court (Cronan, J.) granted Lincoln Life's motion after concluding that Section 3203(a)(2) did not cover Lupe's Planned Premium. First, citing the statutory requirement that the insurer refund "any premium actually paid <u>for any period</u> beyond the end of the policy month in which [the] death occurred," N.Y. Ins. Law § 3203(a)(2) (emphasis added), the District Court held that the Planned Premium was not "paid for any specific period," App'x 335 (quotation marks omitted). Planned Premiums, the District Court explained, could be "less than or greater than the monthly cost of insurance," and paying a Planned Premium would not necessarily prevent a policy from terminating.

8

App'x 335. The District Court also noted that "myriad issues . . . would result from interpreting a Planned Premium as being 'for' a specific period." App'x 336. If a policyholder made an unscheduled payment into the Policy Account, for example, "it would be exceedingly difficult to identify which payment — the unplanned deposit or the 'annual' Planned Premium — was for any specific period of coverage." App'x 336–37. Finally, the District Court disagreed with Nitkewicz that "a reasonable person would interpret" the fact that Lupe had elected to pay her Planned Premium annually "to mean that the Planned Premium was for an 'annual' period." App'x 338. Instead, according to the District Court, the frequency of the payments simply defined "the anticipated recurrence of payment of the Planned Premium." App'x 339.

The District Court also separately considered whether the Planned Premium was "actually paid." See App'x 341 (quoting N.Y. Ins. Law § 3203(a)(2)). In context, the District Court explained, "the phrase 'actually paid' serves to . . . distinguish between payments promised and payments that have actually paid for a period of coverage." App'x 341. Planned Premiums, it reasoned, do not actually pay for coverage because they are merely "statement[s] of intent." App'x 341. And the funds in the Policy Account "do not actually pay

9

for any insurance until they are taken from the Policy Account via the monthly deduction." App'x 341–42.

For these reasons, the District Court concluded, Lupe's Planned Premium was not a "premium actually paid for any period," such that it would be covered under Section 3203(a)(2).

This appeal followed.

**DISCUSSION**

We review a District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all the factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." Doe v. Guthrie Clinic, Ltd., 710 F.3d 492, 495 (2d Cir. 2013).

The question on appeal is whether a planned payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a "premium actually paid for any period" under Section 3203(a)(2). As directly applied to this case, the question is whether Lincoln Life should have refunded a prorated amount – totaling $31,428.83 – of the $53,878 Planned Premium that Lupe paid in May 2018 before she died.

10

In construing Section 3203(a)(2), we start with "the language itself." People v. Roberts, 31 N.Y.3d 406, 418 (2018). "If the words chosen have a definite meaning, which involves no absurdity or contradiction, then there is no room for construction and courts have no right to add or take away from that meaning." Id. (quotation marks omitted). "Nevertheless, in construing a statute courts should consider the mischief sought to be remedied by the . . . legislation, and they should construe the act in question so as to suppress the evil and advance the remedy." Id. at 418–19 (quotation marks omitted).

Section 3203(a)(2) requires that all life insurance policies "delivered or issued for delivery in" New York must contain a provision that "if the death of the insured occurs during a period for which the premium has been paid, the insurer shall add to the policy proceeds a refund of any premium actually paid for any period beyond the end of the policy month in which such death occurred."[2] N.Y. Ins. Law § 3203(a)(2). As explained above, the District Court held, and Lincoln Life maintains on appeal, that Lupe's Planned Premium was

---

[2] Technically, Section 3203(a) requires that all life insurance policies contain this provision or "provisions which the [S]uperintendent [of Financial Services] deems to be more favorable to policyholders." N.Y. Ins. Law § 3203(a). Insurance policies must therefore include refund provisions that are at least as favorable to policyholders as what the statute provides.

11

neither made "for any period" nor "actually paid," placing it outside the ambit of the statute.

With respect to whether the Planned Premium was paid "for any period," Lincoln Life argues that the statute requires the payment to have corresponded to a specific period of coverage, and that it is the monthly deduction, not the Planned Premium, that "actually pays for each monthly period of coverage." Appellee's Br. 17 (quotation marks omitted). Lincoln Life also insists that the Planned Premium "is neither necessary nor sufficient to purchase coverage for any period, and [that] there is no non-arbitrary way to assign any particular or identifiable portion of a Planned Premium to any period of coverage." Id. at 22.

Nitkewicz disagrees and points out that the statute does not further qualify the phrase "for any period" to provide that the paid premium must be "for any period of coverage guaranteed by the premium payment." Appellant's Br. 16 (cleaned up). Because Lupe paid her Planned Premium annually, Nitkewicz maintains, the payment was clearly for a yearly period. See id. at 14 ("A reasonable insured would understand the Policy's specified 'ANNUAL' premium to be paid for an 'annual' period."); id. at 15 ("[E]ach annual payment

12

was designed to cover the next year's worth of insurance, until the next annual payment became due.").

As for whether the Planned Premium was "actually paid," Lincoln Life argues that the phrase denotes "the actual transfer of funds in exchange for insurance coverage." Appellee's Br. 17. In support, the company quotes the District Court's observation that "funds do not actually pay for any insurance until they are taken from the Policy Account via the monthly deduction." Id. (quotation marks omitted). "Unless and until the monthly deduction is charged against the Policy Account," says Lincoln Life, "the Policy Account value is not 'paid' but held in consideration of the non-insurance component of the Policy." Id. at 18.

In response, Nitkewicz counters that "'actually paid' means what it says: a premium is 'actually paid' when there is a payment that is actually made, as opposed to a premium that was due, but not paid." Appellant's Reply Br. 9.

Unfortunately, neither Lincoln Life nor Nitkewicz can point to any decision of the New York courts in support of their preferred interpretations.[3]

---

[3] At oral argument, counsel for Nitkewicz suggested that one practical reason for the lack of caselaw on Section 3203(a)(2) is that insurance companies are refunding planned premiums as a matter of course. Counsel cited the example of Athene Life Insurance

13

See App'x 360 (counsel for Lincoln Life conceding that "[t]here is no case law" analyzing Section 3203(a)(2)); App'x 365 (counsel for Nitkewicz acknowledging that the issue before us "hasn't come before a court yet to be decided"). And we are not aware of a New York court decision that analyzes Section 3203(a)(2) generally, let alone the phrases "actually paid" or "for any period," in this context or an analogous one. Nor do any secondary sources, such as treatises on New York insurance law, shed light on the issue. Whether the statute requires insurance companies to refund Planned Premiums of the sort Lupe paid here thus presents "an unresolved policy decision that the New York Court of Appeals is better situated than we are to make." E.J. Brooks Co. v. Cambridge Sec. Seals, 858 F.3d 744, 750 (2d Cir. 2017) (quotation marks omitted).[4]

Company of New York, which refunded the balance of Lupe's planned premium after her death. Oral Arg. at 9:27–9:42; see also Appellant's Br. 3–4. We agree with Lincoln Life, however, that "any inference from the decision of a different insurer to settle rather than litigate would be speculative." Appellee's Br. 52.

[4] Nitkewicz also argues that he should prevail even under Lincoln Life's interpretation of the statute. See, e.g., Appellant's Br. 24–26 (arguing that even if the statute were read to require a refund only for premiums that guarantee coverage for a specific period, the District Court nevertheless erred by misunderstanding the significance of the Coverage Protection Guarantee Rider, which "transform[ed] [Lupe's] premiums into payments that guaranteed and extended coverage for a full year"); id. at 28–30 (arguing that the District Court "erred by dismissing the relevance of the 15% load charge that Lincoln Life skims off the top of all premium payments," which "is applied to cover the company's cost of insurance" and therefore "confirms that the annual payments were

14

Unable to cite any relevant New York decision, Lincoln Life relies instead on guidance from New York's insurance regulator, the New York Department of Financial Services ("DFS"), in support of its interpretation.[5] DFS has issued a "product outline" for term life insurance. That outline provides general guidance to insurance companies regarding term life insurance policies and uses language that largely tracks the text of Section 3203(a) to describe an insurer's refund obligations in connection with such policies. As Lincoln Life explains, DFS has also issued a product outline for universal life insurance policies, such as the one in question in this case. In that outline, the agency again describes the insurer's refund obligations, though this time without tracking the statutory language. Instead, the outline states that Section 3203(a)(2) applies "if death occurs during a period for which <u>the amount needed to continue the policy has</u>

---

for a year of insurance" (quotation marks omitted)). We are not persuaded. Even assuming that the Coverage Protection Guarantee Rider did transform the Planned Premium into a payment for a specific period of coverage, the premium would still not be "actually paid" under Lincoln Life's interpretation of the statute since only the monthly deduction pays for insurance. The load charge, meanwhile, "does not purchase any period of insurance coverage, nor does it relate to any specific period." Appellee's Br. 49; <u>see</u> App'x 62 (distinguishing between the charge Lincoln Life applies "to each premium You pay" and the "monthly deduction" of the cost of insurance (quotation marks omitted)).

[5] The parties dispute whether we may take judicial notice of these guidance documents, but we need not resolve this dispute one way or the other because we conclude that these materials are not helpful in interpreting Section 3203(a)(2).

been applied," and it adds that the insurer must refund any "such amount applied for any period beyond the policy month in which the death occurred." App'x 132 (emphasis added). This discrepancy between the language of the statute and the language of DFS's guidance, Lincoln Life suggests, shows that Section 3203(a)(2) was not meant to include "money paid in consideration for the non-risk features provided by universal policies." Appellee's Br. 19.

We do not find DFS's guidance helpful to interpreting Section 3203(a)(2). It is true that the guidance suggests that insurance companies may have different refund obligations depending on whether they provide term or universal life insurance policies. But DFS does not explain what it means to "appl[y]" the "amount needed to continue the policy," and the guidance never answers whether a planned premium made for the following year is "applied for" an annual period. In sum, because neither party has offered any authoritative source regarding the meaning of the phrase a "premium actually paid for any period," N.Y. Ins. Law § 3203(a)(2), we turn to whether certification to the New York State Court of Appeals is appropriate in this case.[6]

---

[6] The Court of Appeals has explained that it will uphold regulations promulgated by the Superintendent of Financial Services, who oversees the DFS, "in deference to [her] special competence and expertise with respect to the insurance industry." Med. Soc'y

**CERTIFICATION**

Under Second Circuit Local Rule 27.2, we may certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); see also N.Y. Const. art. VI, § 3(b)(9); Benesowitz v. Metro. Life Ins. Co., 471 F.3d 348, 351 (2d Cir. 2006), certified question answered, 8 N.Y.3d 661 (2007) ("Where, as here, New York's highest court has not interpreted a New York statute, we must either predict how the New York Court of Appeals would resolve the question, or certify the statutory interpretation question to the New York Court of Appeals for a definitive resolution." (cleaned up)).

In deciding whether certification is appropriate, we consider three questions: (1) whether "there are authoritative state court interpretations of the statutory language"; (2) whether "the issue is important to a state policy"; and (3)

---

of N.Y. v. Serio, 100 N.Y.2d 854, 864 (2003) (quotation marks omitted). Even assuming that the Court of Appeals were inclined to extend the same deference to the agency's product outlines, such deference has its limits. It is not warranted if the agency's interpretation "runs counter to the clear wording of a statutory provision," id. (quotation marks omitted), a question of statutory interpretation that, as we explain below, the Court of Appeals has a strong interest in addressing in the first instance.

whether "certification can resolve the appeal." Benesowitz, 471 F.3d at 351.

Here, each factor favors certification.

First, as we have explained, no New York court has interpreted Section 3203(a)(2) or discussed the meaning of the phrases "actually paid" or "for any period" in a relevant context. This factor thus "weighs heavily in favor of certification." E.J. Brooks Co., 858 F.3d at 752; see Carney v. Philippone, 332 F.3d 163, 172 (2d Cir. 2003) ("New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken." (quotation marks omitted)). Neither party is able to offer any compelling reason why we should not let the New York Court of Appeals address this question of statutory interpretation in the first instance. See Oral Arg. at 8:36–10:19, 20:32–21:27; see also ECF No. 58 ("If the Court has continued doubts on the merits, Plaintiff has no objection to certification of the question to the New York Court of Appeals.").

Second, New York has a fundamental interest in interpreting its own statutes. See Benesowitz, 471 F.3d at 352 ("We are asked to construe a New York statute, a task that is obviously central to the jurisdiction of the New York courts."). Moreover, the central issue in this appeal — whether a planned

18

payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a "premium actually paid for any period" under Section 3203(a)(2) — is "of exceptional interest to both insureds and insurers in New York, as well as to the state itself, which is responsible for regulating the relationship between insurers and insureds." Id.; see also id. ("[T]he insurance industry in New York is highly regulated by the state, and states have a strong interest in supervising highly regulated industries."). Whether such a deposit constitutes a "premium actually paid for any period" may affect, among other things, what kind of life insurance individuals elect to buy and how insurance companies structure their policies. See Appellant's Br. 19–22 (arguing that Lincoln Life's interpretation of Section 3203(a)(2) would arbitrarily advantage buyers of term life insurance policies over buyers of flexible-premium policies); Appellee's Br. 44–45 (suggesting that Nitkewicz's interpretation would undermine Lincoln Life's attempt to "specifically design[]" its policy such that "a refund is never necessary"). Interpreting Section 3203(a)(2) thus involves "value judgments and important public policy choices that the New York Court of Appeals is better situated than we are to make." Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 450 (2d Cir. 2013) (quotation marks omitted).

19

Finally, certification "has the 'capacity to resolve this litigation.'" <u>E.J. Brooks Co.</u>, 858 F.3d at 752 (quoting <u>Caronia</u>, 715 F.3d at 449). If the Court of Appeals were to conclude that Section 3203(a)(2) covers premiums such as the one Lupe paid here, we would vacate the judgment of the District Court and remand for further proceedings, thereby ending the appeal. <u>See id.</u> If, on the other hand, the Court of Appeals were to agree with the District Court that such premiums are not "actually paid for any period," we would affirm the District Court's judgment. Thus, certification would "likely dictate the result of . . . this appeal." <u>Benesowitz</u>, 471 F.3d at 352.

## CONCLUSION

For the foregoing reasons, we **CERTIFY** the following question to the New York Court of Appeals:

> Whether a planned payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a "premium actually paid for any period" under the refund provision of New York Insurance Law Section 3203(a)(2).

In certifying this question, we understand that the New York Court of Appeals may reformulate or expand the certified question as it deems appropriate.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a

copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification. Decision is **RESERVED**.

**CERTIFICATE**

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.